**2015 UT App 30**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Plaintiff and Appellant,
*v.*
MICHAEL S. BLACK AND ALTA MARIE BLACK,
Defendants and Appellees.

Opinion
No. 20130535-CA
Filed February 12, 2015

Third District Court, West Jordan Department
The Honorable Mark S. Kouris
Nos. 111400921 & 111400922

Sean D. Reyes and Jeanne B. Inouye, Attorneys
for Appellant

John Walsh, Attorney for Appellee
Michael S. Black

Grant W.P. Morrison, Attorney for Appellee
Alta Marie Black

JUDGE JOHN A. PEARCE authored this Opinion, in which JUDGES
GREGORY K. ORME and KATE A. TOOMEY concurred.

PEARCE, Judge:

¶1     Seven months after a jury returned guilty verdicts against
Michael S. Black and Alta Marie Black, the district court arrested
judgment, dismissed the charges, and acquitted the defendants
based upon newly available testimony that had not been

presented at trial.[1] We conclude that the district court lacked the authority to acquit the defendants and that its order was in effect an arrest of judgment. We conclude that the district court erred in arresting judgment, because a district court may only consider the facts proved or admitted at trial to determine whether they constitute a public offense. We further conclude that the district court erred by dismissing the charges, because it based that decision on its own reassessment of witness credibility in light of new testimony. The State concedes that the defendants should be granted a new trial based upon the now-available evidence. We reverse the district court's arrest of judgment, dismissal of charges, and order of acquittal. We remand the case to the district court to consider the motion for new trial in light of the State's concession.

## BACKGROUND

¶2      We recite the facts in the light most favorable to the jury's verdict, and we present conflicting evidence as necessary to understand issues raised on appeal. *State v. Heaps*, 2000 UT 5, ¶ 2, 999 P.2d 565; *State v. Melancon*, 2014 UT App 260, ¶ 3, 339 P.3d 151.

¶3      The State accused Michael S. Black and Alta Marie Black (Defendants) of committing a number of financial misdeeds arising out of a series of real estate transactions. The State brought fourteen charges against Defendants, alleging that they

---

1. We recognize the conceptual difficulty inherent in the district court dismissing the charges and acquitting the defendants of those same charges. On appeal, the parties treat both orders as effectual and analyze them separately. We follow their approach.

had misused funds entrusted to them by a would-be homebuyer (Homebuyer).

¶4     In 2005, Homebuyer had paid a $60,000 deposit toward the purchase of a house and began making monthly payments. Later, Homebuyer asked Defendants to help her complete the house purchase and entrusted $180,400 to them for that purpose. On September 22, 2008, Alta Marie Black and a title agent (Title Agent) came to Homebuyer's residence. Homebuyer signed documents that relinquished her interests in the $60,000 and in the house to Defendants.[2] Defendants then resold the house, claiming that it would help Homebuyer buy a different house. Homebuyer received no more than $6,000 from the transaction.

¶5     At trial, Homebuyer testified about the September 22, 2008 meeting. She stated that she had been ill and vomiting. According to Homebuyer, Alta Marie Black and Title Agent arrived with documents and would not leave until Homebuyer signed all of them. Homebuyer testified that she had not seen the documents before and did not know what she was signing. Homebuyer claimed that Alta Marie Black told her that she was going to get her money back. Homebuyer also testified that because she could not see well that day, Alta Marie Black and Title Agent put Homebuyer's fingers on the signature lines to help her sign the documents.[3]

---

2. These documents included a reconveyance of Homebuyer's interest in the house to Alta Marie Black and a beneficiary's demand for payoff. The demand was for "$0," was signed by Homebuyer, and was notarized by Title Agent.

3. Alta Marie Black also testified about the meeting. She claimed that Homebuyer had not said anything about being sick and that Homebuyer had been "ambulatory."

¶6　At the close of the State's case, Defendants moved for a directed verdict. The court denied the motion. After the defense presented its case, the jury returned guilty verdicts against Defendants.[4] A week after trial, Defendants filed a motion for judgment notwithstanding the verdict regarding one of the counts and a motion for new trial. Those motions focused on an exhibit that the State had introduced at trial.

¶7　Several months later, but before sentencing, Defendants filed a supplemental memorandum to the motion for new trial. Defendants also filed a motion to arrest judgment. Defendants argued that the State had withheld or concealed exculpatory evidence—Title Agent's testimony—by convincing Title Agent that she could be prosecuted for talking to Defendants or their attorneys.

¶8　During the investigation of the case, the State had subpoenaed Title Agent. At that time, the State's investigator told Title Agent that she could not disclose the existence of the subpoena to anyone outside the title company. Based on this conversation, Title Agent believed that she was forbidden from discussing the case with Defendants or their attorneys.[5] When the State subpoenaed her to testify at trial, Title Agent reported that she had suffered a brain injury and would be unable to testify because of the medication she had been prescribed. The

---

4. Specifically, the jury found Michael S. Black guilty on three counts of theft, four counts of money laundering, and one count of engaging in a pattern of illegal activity. The jury found Alta Marie Black guilty on one count of theft.

5. There is a dispute as to whether the State's investigator mischaracterized or Title Agent's attorney misconstrued the scope and duration of the instruction not to discuss the investigation.

trial was later postponed, but neither side subpoenaed Title Agent to testify at the rescheduled trial. After the trial, Defendants' attorneys subpoenaed Title Agent. Title Agent contacted the prosecutor to ask whether she could respond. According to Title Agent, the prosecutor told her that "it was a free world" and that there was never a "gag order." Defendants' attorneys then deposed Title Agent.

¶9 Based upon her deposition testimony, the district court ordered a post-trial evidentiary hearing to permit Title Agent to testify about the September 22, 2008 meeting with Homebuyer. There, Title Agent testified that she had discussed the documents with Homebuyer, that Homebuyer did not ask for more time to review the documents, and that Title Agent had not refused to leave until the documents were signed. Title Agent also testified that she had not heard Alta Marie Black refuse to leave until the documents were signed.

¶10 The district court determined that Title Agent's testimony "seriously undermines the testimony . . . and credibility of a very critical State's witness that a lot of this evidence balanced upon." The court continued, "I find [Title Agent] undermines the veracity of [Homebuyer's] claim that she didn't enter into this real estate transaction knowingly, voluntarily, that her mind wasn't clear that day, that she hadn't had everything explained to her." Viewing the evidence in the light most favorable to the State's case and the jury's verdict, the district court found that there was "good cause to believe that a theft here was not committed" and that the other crimes charged relied upon a finding of theft. Accordingly, the district court arrested judgment, dismissed all of the charges against Defendants, and ordered Defendants acquitted. The State appeals.

ISSUES AND STANDARDS OF REVIEW

¶11    The State challenges the district court's decision to acquit Defendants, arrest judgment, and dismiss the charges. We review the district court's decision to acquit a defendant after a jury has returned a guilty verdict for correctness. *See State v. Myers*, 606 P.2d 250, 252 (Utah 1980).

¶12    A district court "may arrest a jury verdict when the evidence, viewed in the light most favorable to the verdict, is so inconclusive or so inherently improbable as to an element of the crime that reasonable minds must have entertained a reasonable doubt as to that element." *State v. Bolson*, 2007 UT App 268, ¶ 10, 167 P.3d 539 (citation and internal quotation marks omitted). Accordingly, we review the district court's decision to arrest judgment for correctness.

¶13    A district court's determination that the evidence presented at trial "is not legally sufficient to establish the offense charged," *see* Utah R. Crim. P. 17(p), is a legal determination, which we review for correctness, *see State v. Hamilton*, 2003 UT 22, ¶ 17, 70 P.3d 111.

ANALYSIS

I. Acquittal

¶14    The State first argues that the district court erred in characterizing its action as an acquittal. The district court ordered "that Alta Black and Michael Black are acquitted of all charges filed in this matter." "In Utah, a judge may not acquit a defendant after a jury returns a guilty verdict." *State v. Larsen*, 834 P.2d 586, 589 (Utah Ct. App. 1992). Indeed, this court has noted that there "is no rule . . . that allows a judge, who is not the trier of fact, to acquit a defendant following a jury verdict of guilty." *Id.* The Utah Supreme Court has explained that when

"there has been a trial by jury, the [S]tate, as well as the defendant, is entitled to the benefit of the findings and the verdict of the jury." *State v. Myers*, 606 P.2d 250, 251 (Utah 1980).

¶15  "[T]he label attached to a ruling by a trial judge is not determinative of whether the termination of a criminal prosecution is an acquittal." *State v. Musselman*, 667 P.2d 1061, 1064 (Utah 1983). In *Larsen*, we distinguished between an acquittal (which requires a finding that the evidence was insufficient to enable the jury to convict) and an arrest of judgment (which allows the district court to determine whether the facts established at trial actually demonstrate prohibited conduct). *Larsen*, 834 P.2d at 590; *see also* Utah R. Crim. P. 23 ("[T]he court upon its own initiative may, or upon motion of a defendant shall, arrest judgment if the facts proved or admitted do not constitute a public offense . . . ."). The district court in *Larsen*, like the district court here, denied a motion for directed verdict at the close of the State's case, finding that the evidence presented was sufficient to support a guilty verdict. *Larsen*, 834 P.2d at 590. We conclude, as we did in *Larsen*, that the post-verdict order was in substance an arrest of judgment and not an acquittal.[6] *See id.*

## II. Arrest of Judgment

¶16  The State next contends that the district court erred by arresting judgment. The arrest-of-judgment rule provides that a district court may "arrest judgment if the facts proved or

---

6. This distinction is more than a matter of semantics. Utah Code section 77-18a-1 allows the State to appeal from an arrest of judgment, *see* Utah Code Ann. § 77-18a-1(3) (LexisNexis 2012), but a valid acquittal is not appealable "no matter how overwhelming the evidence against the defendant may be," *see* *State v. Musselman*, 667 P.2d 1061, 1064 (Utah 1983).

admitted do not constitute a public offense, or the defendant is mentally ill, or there is other good cause for the arrest of judgment." Utah R. Crim. P. 23. The State argues that it was improper for the court to find that the evidence, including testimony not presented at trial, did not constitute the public offenses charged.

¶17  Here, the district court arrested judgment because it found that the totality of the evidence was "so inconclusive and so inherently improbable as to the element required in this crime, that reasonable minds must entertain a reasonable doubt as to that . . . element." We construe this to be, in essence, a ruling that the "facts proved or admitted do not constitute a public offense." Utah R. Crim. P. 23. In determining that the complete evidentiary picture was inherently improbable, the district court relied heavily on Title Agent's post-trial testimony. Because this testimony was never presented to the jury, the facts it contained were never proved or admitted, as rule 23 requires. *See id*. Thus, it was error for the district court to arrest judgment based upon evidence never presented to the jury.

### III. Dismissal of Charges

¶18  The State also contends that the district court erred by dismissing the charges against Defendants. The district court dismissed the charges because it found that the evidence supporting those charges was inherently improbable. "At the conclusion of the evidence by the prosecution, or at the conclusion of all the evidence, the court may issue an order dismissing any information or indictment, or any count thereof, upon the ground that the evidence is not legally sufficient to establish the offense charged therein or any lesser included offense." Utah R. Crim. P. 17(p). Here, however, the evidence was not legally insufficient. Indeed, the district court denied Defendants' motion for a directed verdict at the end of the State's case-in-chief. This was an implicit ruling that the State's

evidence was sufficient, if the jury believed it, to support a conviction.

¶19    Title Agent's post-trial testimony contradicted the evidence presented at trial. Thus, if it had been presented to the jury, it would have created an evidentiary conflict. The existence of a conflict in the evidence does not render the totality of the evidence insufficient. It is the role of the factfinder to examine and resolve such conflicts. And "[w]hen the evidence presented is conflicting or disputed, the jury serves as the exclusive judge of both the credibility of witnesses and the weight to be given [to] particular evidence." *State v. Yanez*, 2002 UT App 50, ¶ 19, 42 P.3d 1248 (citation and internal quotation marks omitted).

¶20    In certain limited circumstances a reviewing court may reassess witness credibility. For example, a court may reconsider a witness's testimony when the events described therein are physically impossible or the testimony standing alone appears false without resort to inferences or deductions. *See id.*; *see also State v. Robbins*, 2009 UT 23, ¶ 16, 210 P.3d 288. When confronted with an apparent falsity, a district court may "reevaluate the jury's credibility determinations only in those instances where (1) there are material inconsistencies in the [witness's] testimony and (2) there is no other circumstantial or direct evidence of the defendant's guilt." *Robbins*, 2009 UT 23, ¶ 19. "The existence of any additional evidence supporting the verdict prevents the judge from reconsidering the witness's credibility." *Id.* Thus, a court may not intrude upon the domain of a jury simply because two or more witnesses give conflicting accounts.

¶21    When a jury has been deprived of the ability to assess conflicting evidence, the correct remedy is not to substitute the court's assessment of weight and credibility for the jury's. Rather, if the district court determines that the absence of the newly available evidence "had a substantial adverse effect upon the rights of a party," the court should consider granting a new

trial to afford a jury the opportunity to consider that evidence for itself. *See* Utah R. Crim. P. 24.

¶22    We conclude that the district court erred by weighing the evidence after the jury returned a verdict and determining that a reasonable jury could never resolve the evidentiary conflict Title Agent's testimony created in favor of conviction. The court therefore erred by dismissing the charges against Defendants.

CONCLUSION

¶23    The district court's order of acquittal was in effect an arrest of judgment, which we reverse. The district court improperly considered evidence not presented at trial to determine whether the evidence was sufficient to demonstrate a public offense; the court's arrest of judgment was therefore error. Because the power to resolve evidentiary conflicts belonged to the jury in this matter, the district court erred by dismissing the charges against Defendants on the ground that one witness's testimony rendered the other evidence inherently improbable. We reverse the district court's arrest of judgment, dismissal of charges, and order of acquittal. We remand to the district court to consider Defendants' motion for new trial, particularly in light of the State's concession that Title Agent's testimony might have resulted in a different trial verdict had it been presented to the jury.

—————