**2018 UT App 227**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
TIMOTHY RYAN ROBINSON,
Appellant.

Opinion
No. 20160990-CA
Filed December 13, 2018

Third District Court, Salt Lake Department
The Honorable Vernice S. Trease
No. 161901905

Debra M. Nelson and Wojciech S. Nitecki, Attorneys
for Appellant

Sean D. Reyes and Jonathan S. Bauer, Attorneys
for Appellee

JUDGE DIANA HAGEN authored this Opinion, in which
JUDGES MICHELE M. CHRISTIANSEN FORSTER and RYAN M. HARRIS
concurred.

HAGEN, Judge:

¶1 Timothy Ryan Robinson appeals his sentence for aggravated assault, arguing that the district court failed to properly resolve an inaccuracy in his presentence investigation report (PSR). Specifically, Robinson objected to the four points added to his criminal history score based on his prior conviction for assault on a police officer. In determining that the assault was a "person crime with injury" for purposes of the sentencing guidelines, the district court looked to the PSR, police report, and photographs from the prior crime and concluded that an "injury" occurred where Robinson punched the police officer in the face, causing pain and a laceration to his nose. Robinson

argues that the court should not have relied on such evidence and that the court abused its discretion by finding that the injury sustained by the police officer qualified for the four-point assessment. We affirm.

BACKGROUND

¶2 Following an episode of domestic violence between Robinson and his wife, the State charged Robinson with several offenses, including aggravated assault. In exchange for the State dismissing six of the charges, Robinson pled guilty to one count of aggravated assault, a third-degree felony, with a weapon enhancement.

¶3 At the district court's request, Adult Probation and Parole (AP&P) conducted an investigation and submitted a PSR. As part of the PSR, AP&P calculated a criminal history assessment score for Robinson, which it then incorporated into the Utah Sentencing Commission's general matrix (Sentencing Matrix). The Sentencing Matrix "compare[s] a defendant's 'criminal history assessment' score with the degree of the offense of which he ha[s] been convicted" to "assist sentencing judges in deciding whether or not to incarcerate." *State v. Egbert*, 748 P.2d 558, 561–62 (Utah 1987) (Durham, J., dissenting).

¶4 Robinson received a criminal history assessment score of eight, placing him in criminal history category III. Four of the eight criminal history points were based on Robinson's prior conviction for attempted homicide, which AP&P categorized as a "person crime with injury."[1] When viewed in conjunction with

---

1. This category no longer appears in the Utah Sentencing Guidelines. "The distinction between prior person crimes with or without injury has been replaced with a specific number for a specific type of offense by severity." Utah Sentencing Comm'n, *Adult Sentencing & Release Guidelines* 1 (2017),

(continued…)

the third-degree felony to which Robinson pled guilty, Robinson's category III score produced a recommendation of an "intermediate sanction" on the Sentencing Matrix—i.e., "any sanction between regular probation and prison." Utah Sentencing Comm'n, *Adult Sentencing & Release Guidelines* 17 (2015), https://www.utah.gov/pmn/files/172049.pdf. AP&P recommended, however, that the district court deviate from that recommendation and impose the maximum sentence of one-to-ten years in the Utah State Prison "due to the extremely brutal nature of the offense, as well as the defendant's repeated history of violent behaviors," which indicate that Robinson is "an immediate public safety risk."

¶5 Robinson challenged the accuracy of the PSR, arguing that AP&P had incorrectly categorized his prior attempted homicide conviction as a "person crime with injury" based on the mistaken belief that the offense had resulted in death. Because no injury or death had occurred during the commission of that prior crime, Robinson argued that he should have been awarded only two points instead of four toward the total score on his criminal history assessment. A reduced criminal history score of six would have placed him in criminal history category II, resulting in a recommendation of "probation" under the Sentencing Matrix.

¶6 After reviewing the objections to the PSR, AP&P admitted that it had erroneously stated that Robinson had previously caused the death of another individual. But AP&P determined that Robinson should nevertheless be assessed four points for committing a prior person crime with injury based on a separate class A misdemeanor conviction for assaulting a police officer.

---

(…continued)
https://justice.utah.gov/Sentencing/Guidelines/Adult/2017%20Adult%20Sentencing%20and%20Release%20Guidelines.pdf.

¶7     Robinson moved the district court to correct the PSR, contending that AP&P's amended evaluation was "driven by the earlier error[] rather than a fair assessment of the facts" underlying the prior assault conviction. Robinson further argued that the award of four points was "particularly inappropriate" because the PSR for the prior assault conviction reflected that the police officer reported "no physical or emotional injury as a result of the incident."

¶8     The district court requested that Robinson submit the police report, photographs, and PSR from the prior assault case for it to consider. Before relying on that evidence to determine whether Robinson's prior person crime conviction involved an injury, the court asked, "[D]oes anybody contest what the photograph and the police reports say?" Robinson's counsel responded, "No." The court followed up by asking, "[D]oes everybody agree the police reports are what they are? This is what they say? The photographs of the police officer." In response, Robinson's counsel stated, "That is correct."

¶9     The district court ultimately determined that Robinson's prior assault conviction qualified as a "person crime with injury" under the Sentencing Matrix. Because the sentencing guidelines do not include a definition of "injury," the district court referred to the Utah Criminal Code, which defines "bodily injury" as "physical pain, illness, or any impairment of physical condition." *See* Utah Code Ann. § 76-1-601 (LexisNexis 2017). Based on this definition, the court found "the officer did have an injury," even if it was minor. In support of its finding, the court pointed to the police report, which stated that the officer had been "punched in the nose by [Robinson]," and the photograph, which showed "blood on the left side of his nose."

¶10    The district court adopted the PSR, including the four-point enhancement for the prior assault, and ultimately sentenced Robinson to one-to-ten years in prison, the maximum permissible sentence for a third-degree felony with an enhancement for the use of a dangerous weapon. In doing so,

the court stated that its decision to send Robinson to prison was not "based on those two extra points."

¶11 Robinson appeals. Although he does not challenge the ultimate sentence imposed, he asserts that his PSR "will follow him through the justice system" and seeks "a remand for the purpose of correcting the inaccuracy in his PSR."

ISSUES AND STANDARDS OF REVIEW

¶12 Robinson raises two sentencing issues on appeal, one procedural and one substantive. As to the procedural issue, he contends that the district court failed to comply with its legal duty to properly resolve the alleged inaccuracy contained in the PSR. "Whether the [district] court properly complied with a legal duty to resolve on the record the accuracy of contested information in sentencing reports is a question of law that we review for correctness." *State v. Waterfield*, 2014 UT App 67, ¶ 29, 322 P.3d 1194 (quotation simplified). Robinson also argues that the court erred in relying on unreliable police reports and photographs to resolve his objection. Whether the court based its sentencing decision on reliable information also "presents a question of law that is reviewed for correctness." *State v. Maroney*, 2004 UT App 206, ¶ 24, 94 P.3d 295.

¶13 Substantively, Robinson contends that the district court abused its discretion in determining that the injury sustained by the police officer rendered that conviction a "person crime with injury." This sentencing determination resulted in a higher criminal history assessment score. District courts are afforded wide latitude in sentencing, and we will reverse a sentencing decision only if the court abused its discretion. *See State v. Moa*, 2012 UT 28, ¶ 34, 282 P.3d 985. "This court reviews the sentencing decisions to discover any abuse of discretion by applying varying standards of review consistent with the issues raised." *State v. Rhodes*, 818 P.2d 1048, 1049 (Utah Ct. App. 1991). For questions of law, we employ a correctness

standard. *See id.* at 50. We review questions of fact for clear error. *See id.*

ANALYSIS

I. Procedural Challenge

¶14   Under Utah Code section 77-18-1(6)(a), "[a]ny alleged inaccuracies in the [PSR], which have not been resolved by the parties and the department prior to sentencing, shall be brought to the attention of the sentencing judge." Utah Code Ann. § 77-18-1(6)(a) (LexisNexis Supp. 2018). To resolve such issues, the district court must: (1) "consider the objection raised;" (2) "make findings on the record regarding the accuracy of the information at issue;" and (3) "determine on the record the relevance of that information as it relates to sentencing." *State v. Abelon*, 2016 UT App 22, ¶ 19, 369 P.3d 113 (quotation simplified).

¶15   At sentencing, Robinson objected to the PSR's calculation of his criminal history assessment score. Specifically, Robinson claimed that his prior conviction for assault on a police officer did not qualify as a "person crime with injury," which carried a four-point assessment. Robinson argued that assessing four points was only "rational when . . . someone is convicted or pleads guilty to an offense which requires as an element some type of injury, [and] this isn't such an offense."

¶16   The district court considered Robinson's objection and made findings on the record that Robinson's prior conviction qualified as a person crime with injury for purposes of calculating his criminal history score. On appeal, Robinson challenges the court's use of the police report and photographs from the prior offense in making that determination. Whether it was permissible for the court to look to this evidence to categorize the prior conviction involves two sub-issues, only the first of which was preserved. First, we consider whether the district court

properly looked beyond the elements of the prior offense to the underlying facts that gave rise to that conviction. Second, because we conclude that the court properly looked beyond the elements of the offense, we consider whether the court based its determination on sufficiently reliable evidence. This second sub-issue was not preserved, and although Robinson asks us to reach it through the plain error exception to the preservation rule, Robinson cannot establish plain error on appeal. *See State v. Johnson*, 2017 UT 76, ¶¶ 18–19, 416 P.3d 443 (holding that appellate courts do not consider unpreserved arguments unless an exception to the preservation rule applies and acknowledging plain error as an exception to the preservation rule).

A.     Consideration of Facts Underlying Prior Conviction

¶17    First, Robinson contends that the district court erred in categorizing his prior conviction for assault on a police officer as a "person crime with injury" because that offense does not include injury as an element. But nothing in the language of the Sentencing Matrix limits the application of the "person crime with injury" category to crimes in which injury is an element of the offense.

¶18    The phrase appears only once in the 2015 Utah Sentencing Guidelines, written as "person crime w/injury" at the top of the Sentencing Matrix. *See* Utah Sentencing Comm'n, *Adult Sentencing & Release Guidelines* 19 (2015), https://www.utah.gov/pmn/files/172049.pdf. The instructions accompanying the Sentencing Matrix provide no guidance on how to interpret the phrase. Nor do they define or place any limitation on the term "injury." If the sentencing commission had wished to limit application of the four points to those person crimes in which injury was an element of the offense, it could have easily done so, either in the instructions or by changing the language in the Sentencing Matrix to "person crime w/injury as an element."

¶19    In contrast, the instructions to the Sentencing Matrix do define the term "person crime." A person crime means "any offense listed in Utah Code Annotated 76-3-203.5(c), as well as those designated as person crimes in Addendum B." *Id.* at 14. Addendum B instructs courts to "first determine the degree of the offense (1st degree, 2nd degree, or 3rd degree) by referring to the judgment and commitment order or other official court document. Then, look on this list to determine whether the offense is categorized as *murder, death, person, possession,* or *other." Id.* at 43. While offenses that constitute "person" crimes are listed by statute number, Addendum B does not indicate which of those person crimes should be categorized as "person crimes w/injury." This omission strongly suggests that such a determination is not categorical based on the elements of the prior offense, but depends on the facts underlying the prior conviction.

¶20    In the absence of any contrary direction in the sentencing guidelines, we apply the general proposition that the sentencing court "must be permitted to consider any and all information that reasonably might bear on the proper sentence for the particular defendant, given the crime committed." *Wasman v. United States*, 468 U.S. 559, 563 (1984). The calculation of a defendant's criminal history score does not increase the statutorily prescribed sentence.[2] "The Sentencing Matrix creates

---

2. We note that the United States Supreme Court has adopted a categorical approach to determining whether a prior offense triggers an enhanced sentence under federal recidivism statutes. Under this approach, a court may look "only to the statutory definitions of the prior offenses, and not to the particular facts underlying those convictions." *Taylor v. United States*, 495 U.S. 575, 600 (1990). Lower courts have extended this approach to enhancements under the federal sentencing guidelines based on prior convictions, *see, e.g., United States v. Taylor*, 843 F.3d 1215, 1221–22 (10th Cir. 2016), and some states have applied the

(continued…)

a starting point for sentencing judges by reflecting a recommendation for a typical case, but judges are not bound by the recommendations and are to take both aggravating and mitigating circumstances into account, along with other pertinent considerations, when making sentencing decisions." *State v. Harvey*, 2015 UT App 92, ¶ 3, 348 P.3d 1199 (quotation simplified). In particular, "the decision whether to grant probation is within the complete discretion of the trial court," and, in making that decision, district courts properly consider a defendant's "character, personality[,] and attitude" in conjunction with his or her "prior record." *State v. Miera*, 2015 UT App 46, ¶ 7, 345 P.3d 761 (quotation simplified). We see no reason why, as part of this assessment, courts should be prohibited from considering the underlying facts forming the basis of a defendant's prior person crime conviction, including whether the victim of that crime was injured. *See State v. Howell*, 707 P.2d 115, 117–18 (Utah 1985) (holding that district courts have "substantial discretion in imposing a sentence" and may consider all "reasonably reliable and relevant information in exercising [that] discretion").

---

(…continued)

categorical approach to their own recidivism statutes as well, *see, e.g.*, *State v. Dickey*, 329 P.3d 1230, 1240 (Kan. Ct. App. 2014).

However, a criminal history assessment under the Utah Sentencing Guidelines does not function as a sentencing enhancement. Robinson's third-degree felony conviction with the weapons enhancement carried a term of imprisonment not to exceed ten years, *see* Utah Code Ann. §§ 76-3-203(3), -203.8(2) (LexisNexis 2017), regardless of how his prior conviction for assault on an officer was characterized. Therefore, the court's determination that Robinson's prior conviction involved injury had no impact on the statutorily prescribed sentence. We express no opinion on whether the categorical approach would apply if the classification of Robinson's prior conviction had subjected him to an increased penalty.

B.     Due Process Challenge to Reliability of Evidence

¶21    Having decided that a court may look beyond the elements of the prior offense in categorizing a prior conviction as a "person crime with injury," we turn to the second procedural sub-issue: whether the court's determination was based on reliable evidence. The State argues that Robinson has waived this issue under the doctrine of invited error. We disagree.

¶22    Under the doctrine of invited error, "where a party makes an affirmative representation encouraging the court to proceed without further consideration of an issue, an appellate court need not consider the party's objection to that action on appeal." *State v. Bruun*, 2017 UT App 182, ¶ 59, 405 P.3d 905 (quotation simplified). According to the State, Robinson repeatedly assured the district court that he did not contest the reliability of the police reports and photographs. In support of its position, the State points to the sentencing hearing where the court asked, "[D]oes anybody contest what the photograph and the police reports say?" Robinson responded, "No." Soon after, the court again inquired, "[D]oes everybody agree the police reports are what they are? This is what they say? The photographs of the police officer." In response, Robinson stated, "That is correct."

¶23    The district court's inquiry went to the authenticity of the documents, not their reliability. Under rule 901(a) of the Utah Rules of Evidence, a "proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Utah R. Evid. 901(a). In affirming that the documents "are what they are" or say "what they say," Robinson waived any challenge to the authenticity of the documents, an evidentiary issue distinct from Robinson's challenge to the reliability of the evidence. Because Robinson never affirmatively represented that he had no objection to the court considering the documents for purposes of sentencing, he did not waive the issue asserted on appeal.

¶24   But neither did Robinson preserve the issue. To preserve an issue for appeal, a party "must specifically raise the issue in a timely fashion and must introduce supporting evidence and relevant legal authority." *State v. Salgado*, 2018 UT App 139, ¶ 27, 427 P.3d 1228. Although Robinson objected to looking beyond the elements of the offense in determining whether his prior assault conviction was a person crime with injury, he never argued that the police report and photographs from the prior offense were unreliable. Because the issue was unpreserved, Robinson must establish an exception to the preservation requirement.

¶25   Robinson argues that the court's reliance on this evidence amounted to plain error. To prevail under the plain-error exception to the preservation rule, Robinson must establish that: (1) "an error exists"; (2) "the error should have been obvious to the district court"; and (3) "absent the error, there is a reasonable likelihood of a more favorable outcome." *State v. Williams*, 2018 UT App 176, ¶ 8 (quotation simplified). "If any one of these requirements is not met, plain error is not established." *State v. Diaz-Arevalo*, 2008 UT App 219, ¶ 13, 189 P.3d 85 (quotation simplified).

¶26   Robinson contends that the district court plainly erred because police reports and photographs are insufficiently reliable to satisfy due process. Due process "requires that a sentencing judge act on reasonably reliable and relevant information in exercising discretion in fixing a sentence." *State v. Howell*, 707 P.2d 115, 118 (Utah 1985). "When there is evidence in the record showing a sentencing judge's reliance on specific information, we will not consider it improper for a judge to rely on such information if the evidence in question had indicia of reliability and was relevant in sentencing." *State v. Moosman*, 2017 UT App 11, ¶ 9, 391 P.3d 395 (quotation simplified). "It is the defendant's burden to demonstrate that the information relied upon was unreliable or irrelevant." *Id.* (quotation simplified).

¶27 Robinson has cited no authority to support the proposition that police reports and photographs generated during the investigation of a prior offense do not meet this threshold standard of reliability. Instead, he cites cases concerning the reliability of police reports for purposes of determining their admissibility under the Utah Rules of Evidence. *See State v. Bertul*, 664 P.2d 1181, 1184 (Utah 1983) (concluding that police reports made in anticipation of prosecution and offered by the State do not provide a basis for reliability required under the business records exception); *Layton City v. Peronek*, 803 P.2d 1294, 1297–98 (Utah Ct. App. 1990) (extending *Bertul* to an incident report introduced at a probation revocation hearing where the district court applied the Utah Rules of Evidence). But it is well established that "[e]vidence that is inadmissible at the guilt stage may be admissible for the purpose of sentencing." *Howell*, 707 P.2d at 117. "The rules of evidence in general, and the rules on hearsay exclusions in particular, are inapplicable in sentencing proceedings." *State v. Sanwick*, 713 P.2d 707, 709 (Utah 1986); *see also* Utah R. Evid. 1101(c) (providing that the Utah Rules of Evidence do not apply at sentencing). The cases Robinson cites, which involve the application of the business records exception to the hearsay rule, are similarly inapplicable in the sentencing context.

¶28 "For an error to be obvious to the trial court, the party arguing for the exception to preservation must show that the law governing the error was clear or plainly settled at the time the alleged error was made." *State v. Johnson*, 2017 UT 76, ¶ 21, 416 P.3d 443 (quotation simplified). In the absence of any authority suggesting that police reports and photographs relating to a prior conviction are inherently unreliable for purposes of sentencing, Robinson cannot establish that the district court plainly erred in relying on such evidence.

## II. Substantive Challenge

¶29 In addition to the procedural claims addressed above, Robinson raises a substantive challenge to the district court's

conclusion that the injuries sustained by the police officer warranted a four-point increase to his criminal history score. Specifically, Robinson argues that because the victim's injuries were minor, Robinson's score and the resulting sentence recommendation were disproportionate, especially when compared with other offenses listed under the person crimes category in the sentencing guidelines.

¶30 Robinson's challenge again involves two sub-issues: whether the district court correctly interpreted "injury" to include minor injury and whether the district court abused its discretion in concluding that the police officer suffered such an injury. These two sub-issues are each subject to a different standard of review. *See State v. Rhodes*, 818 P.2d 1048, 1049–50 (Utah Ct. App. 1991). First, we review the district court's legal interpretation of the term "injury" for correctness. *See id.* Second, we review for clear error the court's factual finding that Robinson's prior assault conviction involved "injury." *See id.*

A.     Legal Interpretation of "Injury"

¶31 We first consider whether the district court correctly interpreted the term "injury," as used in the Sentencing Matrix, to include minor injury. Sentencing guidelines are commonly interpreted using traditional canons of statutory interpretation. *See, e.g.*, *United States v. Enrique-Ascencio*, 857 F.3d 668, 672 (5th Cir. 2017) ("Federal sentencing guidelines are analyzed according to the rules of statutory interpretation."); *State v. Campbell*, 814 N.W.2d 1, 4 (Minn. 2012) ("We apply the rules of statutory construction to our interpretation of [Minnesota's] sentencing guidelines.").

¶32 If the guidelines included a definition of "injury," "we would of course look there first." *See O'Hearon v. Hansen*, 2017 UT App 214, ¶ 24, 409 P.3d 85. But as we have explained, *see supra* ¶¶ 18–19, the sentencing guidelines neither define the term, nor do they specify the type or severity of injuries contemplated by this category of offenses. Notably, the

sentencing commission did not use a modifier to limit the prior person crime category to only those crimes involving "serious" or "substantial" injuries, as the legislature often does throughout the Utah Criminal Code. *See, e.g.*, Utah Code Ann. §§ 76-1-601, -102, -103, 76-5-107, 76-6-102 (LexisNexis 2017).

¶33    In the absence of a specialized definition, we interpret "injury" according to its plain meaning. *See O'Hearon*, 2017 UT App 214, ¶ 24. "A starting point for a court's assessment of ordinary meaning is the dictionary." *Id.* ¶ 25 (quotation simplified). Black's Law Dictionary defines "bodily injury" as "[p]hysical damage to a person's body." *Injury*, Black's Law Dictionary (10th ed. 2014). Similarly, the Utah Code's definition provides that "bodily injury" includes "physical pain, illness, or any impairment of physical condition." Utah Code Ann. § 76-1-601. Either definition is sufficiently broad to include a punch to the face resulting in pain and a small laceration. Therefore, the district court did not err in concluding that "a minor injury . . . is nonetheless an injury" that qualifies for the four-point assessment.

B.    Factual Finding that an Injury Occurred

¶34    Second, we review the district court's factual finding that Robinson's prior assault conviction involved injury. We defer to factual findings at sentencing unless they are clearly erroneous. *See State v. Rhodes*, 818 P.2d 1048, 1049–50 (Utah Ct. App. 1991). In finding that the victim of the prior assault was injured, the district court relied on the prior PSR as well as a police report and photographs of the victim's injuries. According to the police report, Robinson "punched [the police officer] in the nose," resulting in "a cut on the [left] side of [his] nose." This account was reiterated in the PSR and corroborated by a photograph depicting the victim with a small laceration and blood on the left side of his nose.

¶35    Although the police officer reported in his victim impact statement that he suffered no physical or emotional injury as a

result of the incident, the district court, as the finder of fact, was entitled to resolve apparent conflicts in the evidence. *See State v. Black*, 2015 UT App 30, ¶ 19, 344 P.3d 644 ("It is the role of the factfinder to examine and resolve such conflicts."). This conflict alone does not render the court's finding clearly erroneous.

## CONCLUSION

¶36    We conclude that the district court properly resolved the alleged inaccuracy in the PSR and did not abuse its discretion in assessing four criminal history points for Robinson's prior assault conviction. Accordingly, we affirm.

———————